IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY BURKHART-DEAL, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 07-1747 |
| vs. | ) ) | |
| CITIFINANCIAL, INC., and DOES 1 through 10, inclusive, | ) ) | |
| Defendant. | | |

**OPINION AND ORDER**

**SYNOPSIS**

In this civil action ("Burkhart-Deal I"), Plaintiff bring claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). To this point, the parties have engaged in discovery directed towards the issue of collective certification, including discovery from a sampling of seven percent of Defendant's branches from Los Angeles, Chicago, New York, Dallas, and Pittsburgh, depositions of eight witnesses, and Defendant's production of the names and contact information for approximately four percent of the putative nationwide group, or approximately seven hundred potential plaintiffs. Three Plaintiffs, in addition to the named Plaintiff, have opted into the action. Moreover, Plaintiff has submitted declarations of several FSRs who allege failures in compensation.

Plaintiff has filed a Motion seeking conditional certification of this action

as a collective, opt-in action under the FLSA.[1]  Her Motion also seeks court-facilitated notice to putative plaintiffs, and production of names and addresses of putative plaintiffs.  Defendant opposes the Motion, on grounds that the putative plaintiffs are not similarly situated, and that the requested notice is inappropriate.

For the foregoing reasons, the Motion will be granted.

## OPINION

### I. APPLICABLE STANDARDS

Under the FLSA, an employee who claims a violation of the right to receive overtime compensation may bring an action on behalf of himself and other "employees similarly situated."  29 U.S.C. § 216(b).  Such employees must also give written consent to opt-in to the action.  Id.  Plaintiff bears the burden of demonstrating that she is similarly situated to the remainder of the proposed group.  E.g., Craig v. Rite Aid Corp., 8-2317, 2009 U.S. Dist. LEXIS 114785, at *8 (M.D. Pa. Dec. 9, 2009).  The term "similarly situated" is not defined in the FLSA, leading to a lack of unanimity among the courts.

This Court has applied a so-called "modest factual showing" standard, which requires the plaintiff to demonstrate a "factual nexus between her situation and the situation of other current and former employees, sufficient to determine that they are similarly situated."  Kuznyetsov v. W. Penn Allegheny Health Sys., No.

---

[1] Unless specifically noted, nothing in this Opinion applies to the parallel proceeding at 8-1289, involving Plaintiff's Motion for Rule 23 class certification, and vice versa.  The requirements and standards for the collective and class actions are, for present purposes, separate and distinct.  I note, too, that Plaintiff has advised the Court that she has nothing immediate to add, via oral argument, over and above the information contained in her filings.

9-379, 2009 U.S. Dist. LEXIS 47163, at **7-8 (W.D. Pa. June 1, 2009) (citing cases). Otherwise stated, plaintiff must make a "'modest factual showing' that similarly situated employees were injured as a result of a single decision, policy or plan before the proposed collective can be conditionally certified." Stanislaw v. Erie Indem. Co., No. 07-1078, 2009 U.S. Dist. LEXIS 85056, at *4 (W.D. Pa. Sept. 17, 2009).

Furthermore, where discovery has commenced, and the parties submit deposition testimony, declarations, and other evidence in support of their respective positions, application of the ["modest factual showing"] test is appropriate." Williams v. Owens & Minor, Inc., No. 09-00742, 2009 U.S. Dist. LEXIS 102304, at *7 (E.D. Pa. Oct. 9, 2009). This test, while stricter than others, is still "extremely lenient."[2]  Id.

"If the plaintiff meets the requisite showing, the class is conditionally certified for the purpose of notice and discovery. ...Once the class is conditionally certified, notice is given to the potential plaintiffs so that they may elect whether to opt-in to the action." Bosley v. Chubb Corp., No. 04-cv-4598, 2005 U.S. Dist. LEXIS 10974, at *5 (E.D. Pa. June 3, 2005).  Subsequently, the parties may conduct discovery regarding the opt-in plaintiffs.  After such discovery, a district court may revoke conditional certification, if the proposed collective does not

---

[2] In arguing against a lenient standard, Defendant points to Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000). In Morisky, the court applied a "stricter standard" because 141 people had opted in, discovery was complete, and the court stated that the action was "clearly beyond the first tier" of the certification analysis.  In Morisky, however, the court did not explain the substance of the "stricter standard," other than suggesting that it required more than "substantial allegations."  Id. at 497.   It appears, therefore, that the Morisky standard was akin to the "modest factual showing" test adopted in Kuznyetsov. To collapse the two stages of certification into one "requires discovery to be largely complete and the case ready for trial," as opposed to limited – even if substantial–discovery related to certification. Herring v. Hewitt Assocs., No. 06-267, 2007 U.S. Dist. LEXIS 53278, at *11 (D.N.J. July 24, 2007).  Here, I decline to collapse the two certification stages.

meet the FLSA's "similarly situated" requirement.  <u>Ruehl v. Viacom, Inc.</u>, 500 F.3d 375 (3d Cir. 2007).

> [T]he purposes of using this method of collective action should be repeated. "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [illegal] activity." <u>Hoffmann-La Roche v. Sperling</u>, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

<u>Garcia v. Freedom Mortg. Corp.</u>, No. 09-2668, 2009 U.S. Dist. LEXIS 103147, at *8 (D.N.J. Nov. 2, 2009)

## II.  SIMILARLY SITUATED

### A. Threshold Inquiry

I first address the initial inquiry of whether Plaintiff has demonstrated that she is similarly situated to other proposed plaintiffs.

In this case, all affidavits submitted by Plaintiff contain a sufficiently similar allegation of injury, based on an unwritten "policy" involving sales targets, job responsibilities, and managerial personnel, that discouraged them from recording or requesting overtime.  They also share a modest factual nexus, in that they all allege that they worked for Defendant as FSRs, were <u>de facto</u> required to work more than forty hours per week, and were not always compensated for that overtime.  <u>See</u> <u>Garcia</u>, 2009 U.S. Dist. LEXIS 103147, at *16. Additionally, all profess that they observed co-workers in their branch offices behaving in this manner.  The individual inquiries to which Defendant points – <u>i.e.</u>, when, and why, each person did not record their overtime on various occasions – do not necessarily negate Plaintiff's modest factual showing that

putative plaintiffs shared a common experience, for common reasons.[3]  Because there is no numerosity requirement, the mere fact that the collective group might be small does not defeat conditional certification.  See, e.g., Cantu v. Vitol, Inc., No. 9-576, 2009 U.S. Dist. LEXIS 118325, at *17 (S.D. Tex. Dec. 21, 2009).

In opposing Plaintiff's argument, Defendant points to a case outside of this Circuit, Basco v. Wal-Mart Stores, Inc., No. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 2, 2004), which undermines Plaintiff's position.  In Basco, plaintiff proffered evidence that one manager required off-the-clock work; that five employees worked more than 40 hours without being paid overtime; and that managers received bonuses for keeping salary costs down, resulting in managerial incentive to encourage off-the-clock work.  Id. at **19-20.  The court found that "plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years…The effects of the policy as alleged are anecdotal, that is to say particularized."  Id. at **21-22.  The Court, therefore, found that conditional certification should be denied.  Id. at *22.

Within this Circuit, however, courts confronting such circumstances have granted conditional certification, and thus held the case over until the next stage of the certification analysis.  An unwritten policy or practice resulting in unpaid overtime, such as hinging management pay on meeting hours targets, may be

---

[3]Moreover, as other courts have noted, individualized fact determinations may be accommodated by other means, such as bifurcating liability and damages, designating pertinent subclasses, or appointing a special master.  Chabrier v. Wilmington Fin., Inc., No. 6-4176, 2008 U.S. Dist. LEXIS 27761, at *9 (E.D. Pa. Apr. 4, 2008).

actionable under the FLSA. See Pereira v. Foot Locker, Inc., No. 7-2157, 2009 U.S. Dist. LEXIS 84022, at **17-18 (E.D. Pa. Sept. 11, 2009).  In such a case, a defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process.  Id. at *18; see also Abercrombie v. Ridge, No. 09-0468, 2009 U.S. Dist. LEXIS 102533, at **15-16 (W.D. Pa. Sept. 22, 2009); Stanislaw, 2009 U.S. Dist. LEXIS 85056.[4]  In sum, "[m]ost courts have held that in unpaid overtime 'off-the-clock' cases, the need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated." Maynor v. Dow Chem. Co., No. 7-504, 2008 U.S. Dist. LEXIS 42488, at *25 (S.D. Tex. May 28, 2008).  I am persuaded that this approach, rather than that taken in Basco, is appropriate here.[5]

Additionally, I take note of Defendant's protests regarding its official policy to pay, and actual payment, of overtime; that it is each employee's responsibility to correctly and truthfully record and submit hours worked; and its efforts to ensure that its policies are enforced. Essentially, Defendant argues that sporadic violations of a formal policy do not a "policy" make.[6]   It is true that the fact that

---

[4] Collective actions in this type of circumstance are not unheard of.  As one court observed, "collective actions have been conditionally certified in off-the-clock cases, and in cases with employees at various locations, and in cases where a defendants' written policies were commonly violated in practice." Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 U.S. Dist. LEXIS 5002 (S.D. Tex. Jan. 24, 2007).

[5] In addition, the evidence thus far adduced here exceeds that presented to the Court in Basco, despite the fact that "substantial" discovery had been conducted in Basco, including depositions of a "substantial" number of individual plaintiffs.

[6] Defendant cites to Mike v. Safeco, 274 F. Supp. 2d 216 (D. Conn. 2003), in support of the proposition that a Plaintiff relying on a deviation from a policy should not obtain certification.   In Safeco, however, the plaintiff claimed that the employer classified him as an administrative

some employees of a large corporation were not properly compensated pursuant to the FLSA does not provide legitimate grounds for inferring an illegal, companywide policy.  Saleen v. Waste Mgmt., 649 F. Supp. 2d 937, 941 (D. Minn. 2009).  The fact that Defendant has a written policy requiring overtime pay, however, does not itself defeat conditional certification.  Burch v. Qwest Communs. Int'l, Inc., 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007).   These arguments, moreover, skirt the merits of Plaintiff's claims.  It is inappropriate, at this stage in the litigation, for me to consider those merits.  Abercrombie, 2009 U.S. Dist. LEXIS at **13-14; Craig, 2009 U.S. Dist. LEXIS 114785, at *12.  Defendant will have the opportunity to reiterate its arguments at the second stage of the certification process.

### B. Collective Definition

That Plaintiff is similarly situated to those submitting declarations, however, does not end my inquiry.  It is not sufficient for Plaintiff to show that she is similarly situated to just anyone; instead, she must share the requisite nexus with "the employees on behalf of whom [she is] seeking to pursue claims." Veerkamp v. United States Sec. Assocs., No. 1:04-cv-0049, 2005 U.S. Dist. LEXIS 5835, at *4 (S.D. Ind. Mar. 15, 2005).  In this case, Plaintiff seeks to pursue claims on behalf of FSRs nationwide;[7] thus, for purposes of this litigation, she must satisfy

---

employee, but spent the majority of his time performing non-administrative duties; thus, he averred, he should be considered non-exempt from the FLSA.  The court's concern lay with the fact that applicable law required an individualized, fact-intensive inquiry into each putative plaintiff's task-to-task, day-to-day activities.  The plaintiff, therefore, had not produced evidence of a common thread.

[7]Plaintiff's proposed Class Definition reads as follows:

the Court that she is "similarly situated" to FSRs nationwide.

Plaintiff submits affidavits from ten employees who worked, at pertinent times, at seventeen Pennsylvania branches; one employee who worked at two branches in Washington state; and two employees who worked at three California branches.[8] Plaintiff herself worked at two Pennsylvania branches. Plaintiff argues that the declarants "undoubtedly represent a small fraction of the actual violations that were occurring nationwide." She has, however, not proffered any legitimate reason to cast doubt aside.[9] None of the declarants, for example, purport to have personal knowledge of violations beyond the branches in which they worked. Defendant, in turn, has submitted counter affidavits from ninety-seven FSRs, from eighty-two branches in twenty-two states, who did not feel the pressure described by declarants, and who did not work any unpaid overtime. Moreover, all but one of these declarants regularly met their sales targets and received bonuses. Based on the factual record, Plaintiff has

---

All persons who, during the Class period: (I) are/were employed as Financial Service Representatives with Citifinancial; (ii) are/were not paid for all of the hours worked in a given workweek; (ii) are/were not paid overtime compensation at a rate not less than one and one-half times their regular rate for each hour worked beyond forty (40) hours during a workweek; and (iv) chose to opt-in to this action....

[8]Those branches are East Stroudsburg, West Mifflin, Penn Hills, Hatboro, and North Huntington, Downington, Allentown, Johnstown, Carlisle, Bedford, Brookhaven, Drexel Hill, Somerset, N. Versaillles, Latrobe, Reading, and Greensburg. Outside of PA, two declarants worked in Ranch Cucamonga, Santa Clarita, and Laverne, CA; and one worked Lakewood and Olympia, WA.

[9]I note evidence that the Plaintiff's declarants were wary of the "Ethics Hotline," which was available for complaints regarding overtime, and were also wary of reporting the lack of overtime pay on audits conducted by Citifinancial. While I accept that the declarants felt deterred from these reporting mechanisms, I cannot infer, merely from individual reluctance, that the evidence that Plaintiff submits is typical of FSRs around the country, just as I would not infer solely from Defendant's submissions that FSRs around the country near-uniformly felt no pressure to work overtime. A handful of employees' fear of reprisal, too, is not sufficient reason to completely discount over 24,300 audit and manager review forms located by Defendant.

proffered no evidentiary basis for concluding that employees at branches in the remainder of the country were affected. Instead, the evidence belies Plaintiff's assertion that FSRs nationwide were victims of the same unlawful policy or practice.[10]

Additionally, the nature of the asserted policy itself does not readily support nationwide certification or notice. Plaintiff's claim rests on an unwritten, <u>de facto</u> requirement that FSRs work unpaid overtime hours, imposed by a combination of infrequent overtime approval, the nature of job responsibilities, and sales and collection targets. This allegedly unlawful "policy," in turn, rested, in some branches, on its implementation or interpretation by individual managers and employees; in other branches, the genesis of the "policy" is unclear.[11] Evidence that certain FSRs were reluctant to submit overtime because management would be displeased does not reasonably give rise to an inference of a uniform, nationwide policy. Plaintiff's protestation that Defendant is centrally organized, that FSRs are all expected to meet monthly sales targets, and that required pre-approval for overtime was more often denied than granted, does not change this fact – those commonalities do not create cohesion regarding the alleged illegalities at issue.[12]

---

[10] I emphasize that I do not now weigh evidence, or consider the merits of Plaintiff's and her declarant's claims – i.e., whether they were in fact denied overtime pay. I merely consider the propriety and scope of collective treatment.

[11] I reach this conclusion based on the declarations submitted by Plaintiff, which state that FSR conduct in changing or discounting working hours stemmed, for example, either from directives by branch managers, or a "general understanding."

[12] Plaintiff correctly contends that she is not required to provide equal evidence for every one of Defendant's branches nationwide. She is, however, required to make a modest factual showing that she is similarly situated to persons in more than three branches. "Modest" means not

The purported policy at issue, in other words, is unlike those facially across-the-board actions or policies in which nationwide notice has been found appropriate. That the policy was unwritten, or contrary to official company policy, is not the fatal characteristic. The problem, instead, is that there is absolutely no reasonable basis for extrapolating the experiences of Plaintiff and her declarants beyond their branches, to the remainder of the country; likewise, there is no evidence that suggests that the "policy" was imposed or sanctioned at a company-wide level, rather than on a manager- or employee-dependent basis. Defendant proffers evidence that sales and collection targets varied by branch, month, and position. Moreover, while this is not alone decisive, as a practical matter, the limited response to the mailing previously conducted by Plaintiff's counsel, as well as the fairly significant volume of pre-certification discovery that Plaintiff has had thus far, supports this conclusion.[13]

In sum, Plaintiff has not made a "modest factual showing" that she is similarly situated to all FSRs in all of Defendant's approximately 2,200 branch offices nationwide. To certify a nationwide collective of FSRs would require an

---

large, but sufficient. Oxford University Press Dictionary, WordPerfect X4. The cases she cites, unlike the case at bar, involved both more widespread evidence and a facially broadly applicable policy. For example, in Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530 (N.D. Cal. 2007), 282 potential plaintiffs employed in 50 cities had already opted into the action, and the allegedly illegal policies were facially uniform – inter alia, a policy of requiring security officers to attend uncompensated pre-shift briefings. In Allen v. McWane, No. 2:06-CV-158, 2006 U.S. Dist. LEXIS 81543 (E.D. Tx. Nov. 7, 2006), plaintiffs submitted affidavits from employees of six out of thirteen of defendant's facilities, and the allegedly illegal policies were facially uniform – i.e., donning and doffing protective gear without compensation.

[13] I do not rely on the letter authored by Plaintiff's counsel, in part because I have been provided with insufficient information about the alleged "mass mailing." For example, Defendant has provided no information about the number or positions of persons to whom the letter was sent.

untenable deductive leap, and would represent an untenable inefficiency. Indeed, due to the dearth of evidence supporting such action, any court-facilitated notice to a nationwide opt-in class would constitute little more than solicitation on behalf of Plaintiff's cause.[14]  As Plaintiff observes, collective actions are favored, in part, for their efficiency and economy.  Certification of a nationwide class, without evidence of nationwide wrongdoing, would not serve the interests of either the parties or the Court.

In circumstances such as these, courts have limited certification and notice to geographic areas in which plaintiffs have made a preliminary factual showing of similarly situated plaintiffs.  Such an approach may be appropriate when Plaintiff has failed to come forward with evidence that an apparent company-wide policy, amenable to collective treatment, was behind the alleged violations. E.g., Kelly v. Bluegreen Corp., 256 F.R.D. 626, 630-31 (W.D. Wis. 2009) (citing cases).[15]  For example, in Veerkamp v. United States Sec. Assocs., No. 21:04-cv-0049, 005 U.S. Dist. LEXIS 5835 (S.D. Ind. Mar. 15, 2005), the plaintiff submitted affidavits representing nine of defendant's branches in Indiana, and affidavits of three employees in Ohio and two in New Jersey.  Based on this showing, the court declined to certify a nationwide collective action, but limited the certification and notice to the state of Indiana.  See also Bernard v. Household Int'l, Inc., 231 F.

---

[14]The Supreme Court has cautioned that such facilitation is "distinguishable in form and function from the solicitation of claims," and that courts must be "scrupulous to respect judicial neutrality." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170-71, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989).  Consistent with this principle, courts have the responsibility to avoid "stirring up" litigation through unwarranted solicitation. Brooks v. BellSouth Telecoms., 164 F.R.D. 561, 567 (N.D. Ala. 1995).

[15]Kelly involved alleged misclassification of commission-only employees nationwide .

Supp. 2d 433, 435-36 (E.D. Va. 2002) (taking similar approach).

As discussed at length, Plaintiff has met the lenient certification requirements, but not as to the entire proposed collective encompassed by her Class Definition. I am persuaded that limiting the collective certification in this manner is appropriate. I will conditionally certify a collective action, but will limit the certification to those branch offices identified in the declarations where Plaintiff has given reason to believe that violations occurred.

### III.   NOTICE

In appropriate cases, district courts have the discretion to implement Section 216(b) by facilitating notice to potential plaintiffs. It is this Court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170-71, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989). In this case, court-facilitated notice is appropriate.

Plaintiff has submitted a proposed notice, to which Defendant raises several objections. The parties will be directed to meet and confer to devise a fair and accurate notice that is agreeable to the parties. As guidance, however, I will take present note of certain of Defendant's objections to Plaintiff's proposal. Such notice shall omit any suggestion that the Court has sanctioned or endorsed the action. Cf. Sperling v. Hoffman-La Roche, Inc., 862 F.2d 439, 447 (3d Cir. 1988). Likewise, the parties are apprised that I find a 120 day opt-in period unreasonably long. Cf. Andrako v. United States Steel, No. 7-1629, 2009 U.S. Dist. LEXIS 78788, at * (W.D. Pa. Sept. 2, 2009).

I apprise the parties, as well, that given the limited locations encompassed by the conditional certification, it appears that posting the notice would be efficient and effective. I find no reason at present to preclude Plaintiff from posting an agreed-upon notice at the locations included in the certification. In connection with notice, Defendant will be directed to provide Plaintiff with the names and addresses of persons that fall within the conditionally certified group. I trust that the parties will be able to resolve remaining disputes regarding the form of notice, and that they will apprise the Court if they cannot do so.

## CONCLUSION

In conclusion, I find that Plaintiff has met her burden to proceed collectively with an action on behalf of FSRs during the class period, in the branches identified by her declarants. Additionally, the parties will be directed to confer regarding the form of notice, and Defendant shall provide Plaintiff with the names and addresses of putative plaintiffs.

An appropriate Order follows.

## ORDER

AND NOW, this 4th day of February, 2010, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Class Certification is GRANTED in part, as fully set forth in the Opinion. A collective action is conditionally certified, comprised of:

> All persons who, during the Class Period: (I) are/were employed as Financial Service Representatives with Citifinancial at branch locations at Cranberry, McKnight Road, East Stroudsburg, West Mifflin, Penn Hills, Hatboro, North Huntington, Downington, Allentown, Johnstown, Carlisle, Bedford, Brookhaven, Drexel Hill, Somerset, North Versaillles, Latrobe, Reading, and Greensburg, Pennsylvania; Ranch Cucamonga, Santa Clarita, and Laverne,

California; and Lakewood and Olympia, WA.; (ii) are/were not paid for all of the hours worked in a given workweek; (ii) are/were not paid overtime compensation at a rate not less than one and one-half times their regular rate for each hour worked beyond forty (40) hours during a workweek; and (iv) chose to opt-in to this action.

The parties are directed to confer and submit a joint proposed notice to be sent to putative plaintiffs, or apprise the Court in writing of the specific reasons that they are unable to do so, within ten (10) days of the date of this Order.

Defendant is directed to provide to Plaintiff, within thirty (30) days of the date of this Order, names and addresses of putative plaintiffs.

A status conference, via telephone, is set for Thursday, March 11, 2010, at 9:30 A.M.  Plaintiff's counsel shall initiate the call.  The parties are to confer and be prepared to apprise the Court, during that conference, regarding areas of agreement and disagreement regarding substantive and chronological parameters of further discovery, and a schedule for motions and briefs regarding the second stage of certification.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, U.S. District Court

Case 2:07-cv-01747-DWA   Document 113   Filed 02/04/10   Page 15 of 15